# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **MOLLY LA FOND,** | : | |
| | : | **Case No. 2:17-cv-526** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Jolson** |
| **NETJETS INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## ORDER ON MOTION TO DISMISS

This matter is before the Court on Defendant NetJets, Inc.'s Motion to Dismiss for Failure

to State a Claim as to Counts I, II, III, IV, V, VII, and IX of Plaintiff Molly La Fond's Amended

Complaint (ECF No. 10),[1] an Unopposed Motion to Dismiss Count IX of the Amended Complaint

(ECF No. 11),[2] Defendant's Motion to Strike (ECF No. 15), and Plaintiff's Motion for Leave to

File a Second Amended Complaint (ECF No. 23).

For the reasons set forth below, the Motion to Dismiss as to Counts I, II, III, IV, V, VII,

and IX is **GRANTED IN PART** and **DENIED IN PART**, the Motion to Dismiss Count IX is

**GRANTED**, the Motion to Strike is **GRANTED**, and the Motion for Leave to File a Second

Amended Complaint is **MOOT**.

---

[1] NetJets' Motion to Dismiss Ms. La Fond's Initial Complaint is rendered **MOOT** (ECF No. 4) by
NetJets' Motion to Dimiss the Amended Complaint.

[2] For good cause shown, the Unopposed Motion to Dismiss Count IX of the Amended Complaint for
claims arising under the Wendell H. Ford Investment and Reform Act for the 21st Century, 49 U.S.C. §
42121, is **GRANTED.** Count IX is hereby **DISMISSED**.

## I. BACKGROUND

### A. Factual Background

Ms. La Fond worked as an Aircraft Dispatcher for NetJets from February 2015 until December 2016. (ECF No. 7 at 2). During her tenure at NetJets, she alleges that she was subject to discrimination on the basis of her gender, including disproportionate scrutiny of her work and intentional assignment of unachievable workloads for the purpose of justifying discipline or termination. (*Id.*). Among other things, Ms. La Fond claims that the phones were set up so she had to field phone calls for the entire team making work impossible, that she was marked "late" when she arrived at the same time as male dispatchers who were marked "on time," and that when she complained about her workload, her supervisor referred to her as "an emotional female." (*Id.* at 13). She filed several complaints with management, but a male colleague warned her to stop complaining lest she be "blacklisted" by the company. (*Id.* at 4).

Eventually, the culture of discrimination, harassment, and retaliation began to impact Ms. La Fond's health: she was taken to the emergency room in August 2016 after complaining of chest pain, dizziness, and shortness of breath. (*Id.*). The next month, her complaints still unaddressed, she requested medical leave to address the panic and anxiety caused by her work environment. (*Id.* at 6). Management labeled her complaints "feminine" and "exaggerated" and referred to her medical leave as a "vacation." (*Id*).

When she returned from medical leave, she experienced more hostility: she continued to be assigned an unachievable workload and her supervisors no longer watched her workload when she left her work area. (*Id.* at 8-9). She alleges that similarly-situated male dispatchers were assigned lighter workloads and were not held to the same standards. (*Id.*at 9).

In December 2016, one of Ms. La Fond's supervisors refused to train her on an unfamiliar assignment and she was forced to seek information from her male peers. She again complained

about the discriminatory treatment, and noted that she could "barely work a shift without feeling symptoms of a heart attack, severe anxiety, chest pain, and [inability] to concentrate." (*Id.* at 10-11).

Ultimately, Dana Weigle, Director of Flight Support scheduled a "disciplinary investigation meeting" with Ms. La Fond. At the meeting, Mr. Weigle stated that he was "tired of the ongoing back and forth" with Ms. La Fond. (*Id*. at 12). When Ms. La Fond asked whether Mr. Weigle was referring to her complaints of discrimination and retaliation, Mr. Weigle allegedly fired her for "[i]nsubordination." (*Id.*).

## B. Procedural Background

In May 2017, Ms. La Fond filed a dual Charge of Discrimination with the Ohio Civil Rights Commission (OCRC) and the Equal Employment Opportunity Commission (EEOC), alleging: (1) disparate treatment because of her disability and sex; (2) a hostile work environment; and (3) retaliation for filing complaints of discrimination and taking medical leave because of her disability. (ECF No. 7 at 15). About a month later, she filed suit in this Court, alleging claims for: Family Medical Leave Act (FMLA) Interference (Count I); FMLA Retaliation (Count II); Sex Discrimination – Disparate Treatment (Count III); Sex Discrimination – Hostile Work Environment (Count IV); Disability Discrimination (Count V); Retaliation for Sex Discrimination Complaints (Count VI); Retaliation for Taking Medical Leave for Disability (Count VII) and Violation of the Whistleblower Statute (Count VIII). (ECF No. 7).

NetJets acknowledges that Ms. La Fond has pled sufficient facts to state a claim as to Count VI, but moves to dismiss all other Counts. (ECF No. 10). NetJets also moves to strike Ms. La Fond's affidavit in support of her Memorandum in Opposition to the Motion to Dismiss. (ECF No. 15 (seeking to strike ECF No. 12-1)).

Ms. La Fond filed a Motion for Leave to File a Second Amended Complaint on June 25, 2018. (ECF No. 23). The putative Second Amended Complaint contained new claims grounded in Title VII and the Americans with Disabilities Act (ADA), which Ms. La Fond could only assert for the first time after the EEOC issued a right to sue letter on May 8, 2018. See, e.g., *Kyle-Eiland v. Neff*, 408 Fed. Appx. 933, 937, n. 8 (6th Cir. 2011); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). The right to sue letter specified that Ms. La Fond must file suit on the federal claims within 90 days of receipt of the letter. (ECF No. 1-1, 2:18-cv-00763-ALM-KAJ). While the Motion for Leave to File a Second Amended Complaint remained pending, Ms. La Fond filed a separate suit, also in this Court, asserting her Title VII and ADA claims against NetJets. (2:18-cv-00763-ALM-KAJ). Because the claims she advances in the second suit are duplicative of the claims she sought to add to this suit, the Motion for Leave to File a Second Amended Complaint is **MOOT.** (ECF No. 23). The parties are free to file later a motion to consolidate the actions pursuant to Rule 42 of the Federal Rules of Civil Procedure should they wish to do so.

## II. STANDARD OF REVIEW

A complaint will survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff alleges facts that "state a claim to relief that is plausible on its face" and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In assessing the sufficiency and plausibility of a claim, courts "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief." *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012) (quotation omitted).

### III. ANALYSIS

#### A. Motion to Strike Ms. La Fond's Affidavit

The Court addresses first NetJets' Motion to Strike Ms. La Fond's affidavit in support of her Response in Opposition to the Motion to Dismiss. (ECF No. 15). It is NetJets' position that Ms. La Fond's affidavit should be stricken because it contains factual allegations beyond those contained in the Complaint. (*Id.*).

Generally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001)). Here, the affidavit is neither attached to the Complaint nor referred to by the Complaint. The Motion to Strike (ECF No. 15) is therefore **GRANTED** and the Court shall **STRIKE** the affidavit. (ECF No. 12-1).

#### B. Count I: FMLA Interference

The Court turns next to NetJets' Motion to Dismiss. (ECF No. 10). Under the FMLA, an employee is entitled to "take up to twelve weeks of unpaid leave, without fear of termination, for a serious health condition that renders the employee unable to perform the functions of his or her job." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 550 (6th Cir. 2008) (citing 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1); *Wysong v. Dow Chem. Co.,* 503 F.3d 441, 446 (6th Cir. 2007)). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to

exercise" that right.  29 U.S.C. § 2615(a)(1). To state a claim for FMLA interference, Ms. La Fond

must demonstrate that: "(1) she was an eligible employee; (2) the defendant was an employer as

defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the

employee gave the employer notice of her intention to take leave; and (5) the employer denied the

employee FMLA benefits to which she was entitled." *Killian v. Yorozu Auto. Tennessee, Inc.*, 454

F.3d 549, 556 (6th Cir. 2006) (quoting *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir.

2005)).

NetJets argues that Ms. La Fond's Amended Complaint is deficient in this regard because

it "does not contain any factual allegations that she was ever denied FMLA leave."  (ECF No. 10

at 5).  It is true that Ms. La Fond's Amended Complaint does not contain a plain statement to that

effect.  But that does not end the inquiry.  Ms. La Fond *does* state that she "had to take FMLA

because of the discrimination, harassment and retaliation" she faced, that she suffered ongoing

medical conditions because of her treatment at work, and that supervisors responded to her requests

for medical leave by telling her that her complaints were "feminine," and "exaggerated" and telling

her to "enjoy the vacation."  (ECF No. 7 at 6). Such treatment could constitute interference with

Ms. La Fond's right to take leave under the Act.  Drawing all inferences in favor of Ms. La Fond,

as the Court is required to do, the Court concludes that she has stated a claim for FMLA

interference.  The Motion to Dismiss Count I is therefore **DENIED**.

### C.  Count II: FMLA Retaliation

Employees are also afforded protection under the FMLA "in the event they suffer

retaliation or discrimination" for exercising their rights under the Act.  An employer may neither

"discriminat[e] against employees . . . who have used FMLA leave" nor may the employer "use

the taking of FMLA leave as a negative factor in employment actions." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 403 (6th Cir. 2003) (quoting 9 C.F.R. § 825.220(c)).

NetJet argues that Ms. La Fond's retaliation claim must fail because no factual allegations in the Amended Complaint indicate that her use of FMLA leave was a "motivating factor in the decision to terminate her employment." (ECF No. 10 at 7). But as Ms. La Fond points out, her Amended Complaint "details a deteriorating work environment" in which harassment and disproportionate scrutiny escalated after she took FMLA leave. (ECF No. 12 at 6-7). It also bears observation that, in a case such as this where it becomes necessary for an employer to take FMLA leave to address health problems that arise *as a result* of harassment on the job, the temporal proximity between use of FMLA leave and additional adverse employment action is particularly compelling to establish an inference of retaliation. All told, the allegations in Ms. La Fond's Complaint are sufficient to establish a prima facie case of FMLA retaliation. *Greer v. Cleveland Clinic Health Sys. – E. Region*, 503 Fed. Appx. 422, 429 (6th Cir. 2012) ("additional scrutiny by one's employers, temporal proximity, or both, are enough to establish the causal nexus needed to make out a prima facie case of Family Medical Leave Act retaliation"). The Motion to Dismiss Count II is therefore **DENIED**.

### D. Count III: Sex Discrimination – Disparate Treatment

Ms. La Fond's next several claims sound in Ohio law. To establish a prima facie case of gender discrimination in Ohio, a plaintiff must establish: "(1) that she is a member of the protected class; (2) that she was subject to an adverse employment action; (3) that she was qualified for the position; and (4) that someone outside the class either replaced her or was treated more favorably." *Smith v. Kelly*, 2012-Ohio-2547, ¶ 19, 2012 WL 2061947 at *4 (Ohio Ct. App. Jun. 8, 2012). NetJets argues that Ms. La Fond's claim must fail because she does not allege that her male

colleagues who were treated more favorably were similarly-situated. (ECF No. 10 at 8). But it is more than sufficient at this stage to, as Ms. La Fond did, note that three male employees were hired after her termination and to note specific ways in which her male colleagues were given favorable treatment (i.e., by being marked "on-time" while she was marked "late" (ECF No. 7 at 13)). The Motion to Dismiss Count III is therefore **DENIED**.

## E. Count IV: Sex Discrimination – Hostile Work Environment

Under Ohio law, it is an unlawful discriminatory practice for "any employer, because of the . . . sex . . . of any person, . . . to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). "An employee 'may establish a violation of R.C. 4112.02(A)'s prohibition of discrimination 'because of . . .sex' by proving either of two types of sexual harassment: (1) 'quid pro quo' harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit; or (2) 'hostile environment' harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment." *A. Lawson v. Nat'l Carton & Coating Co.*, 2002-Ohio-56 (quoting *Hampel v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 176, 729 N.E.2d 726). Ms. La Fond alleges the latter. (ECF No. 7 at 17).

To be actionable under the statute, "the harassment must be harassment that would not have occurred but for the sex of the employee." *Harter v. Chillicothe Long-Term Care, Inc.*, 2012-Ohio-2464, ¶ 18 (Ohio Ct. App. 2012). It also must be "severe and pervasive," a determination that can only be made by reference to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance." *Id.* Although NetJets argues that her claims satisfy neither of these requirements, an examination of Ms. La Fond's Amended Complaint compels the conclusion that her claim is sufficiently pled. The Amended Complaint specifically notes, for instance, that a male coworker stated that "NetJets had a history of disregard for confident females" (ECF No. 7 at 4), and that her work—and the work of other female employees—was subject to greater levels of scrutiny than that of her male colleagues (*id.* at 5-6). Moreover, when Ms. La Fond complained about the excessive workload she was given, her supervisor allegedly referred to her as an "emotional female." (*Id.* at 13). It is not difficult to conclude that these allegations are related to Ms. La Fond's gender. Moreover, Ms. La Fond's contention that the harassment caused her to "experience trauma like symptoms, specifically . . . uncontrollable shaking, sudden vomiting . . . blurry vision, body pains, heart racing, excessive sweating and nervousness, and insomnia" (*id.* at 11) demonstrates a severity and pervasiveness that is sufficient for the claim to survive a Motion to Dismiss. The Motion to Dismiss Count IV is therefore **DENIED**.

### F. Count V: Disability Discrimination

Ohio Revised Code 4112.02 also prohibits an employers from discrimination on the basis of disability. Ohio Rev. Code § 4112.02(A). "Both federal and Ohio disability discrimination actions require the same analysis," under which the plaintiff, to establish a prima facie case, must show "(1) [s]he was "disabled" under the ADA; (2) [s]he was otherwise qualified to perform the essential functions of the job; (3) [s]he suffered an adverse employment action and (4) a nondisabled person replaced h[er]." *Martin v. Barnesville Exempted Vill. Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934, 934 n. 2 (6th Cir. 2000) (citing *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir.1996)).

NetJets advances two arguments as to why Ms. La Fond's claim must be dismissed: First, that she does not plead facts to demonstrate that the person who made the decision to terminate her had knowledge of her disability, and second, that she does not plead facts to support a plausible inference that she was replaced by or treated less favorably than similarly-situated, non-disabled employees. (ECF No. 10 at 13-14).

NetJets concedes that Ms. La Fond alleged that she told the person who made the decision to terminate her employment about her symptoms, that she described her symptoms as "trauma-like," and that she asserted the need to take medical leave as a result of the symptoms. (*Id.* at 13). This is sufficient to infer knowledge of disability; contrary to NetJets' apparent contention, Ms. La Fond need not use any magic words such as "condition" or "disability" to trigger protection under the statute. Moreover, that her terminating supervisor knew of her disability, denied her the opportunity to be assigned to a different supervisor so she could address her depression and anxiety, and fired her within a week of her last complaint of trauma-like symptoms permits the inference, at this stage, that she was treated less favorably than non-disabled colleagues. It is this constellation of facts that distinguishes Ms. La Fond's Amended Complaint from those cases that Defendant cites in which a court found insufficient factual matter to support an inference of discrimination. *See, e.g.*, *Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 626–27 (6th Cir. 2013) (rejecting a claim of racial and gender discrimination because Plaintiff merely pled his own race and gender, that he was given a bad evaluation, and was ultimately fired). The Motion to Dismiss Count V is therefore **DENIED**.

### G.  Count VII:  Retaliation for Taking Medical Leave for Disability

Ms. La Fond's next claim sounds in Ohio Revised Code 4112.02(I), which makes it unlawful for an employer to discriminate against a person who has "opposed any unlawful

discriminatory practice" as defined in the statute or "because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." Ohio Rev. Code § 4112.02(I). "To establish a case of retaliation, a claimant must prove that (1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action." *Greer-Burger v. Temesi*, 2007-Ohio-6442, ¶ 13, 116 Ohio St. 3d 324, 327, 879 N.E.2d 174, 180 (citing *Canitia v. Yellow Freight Sys., Inc*., 903 F.2d 1064, 1066 (6th Cir. 1990)).

Ms. La Fond alleges that she engaged in protected activity under the statute "when she took medical leave for disability." (ECF No. 7 at 18). But taking medical leave does not constitute "oppos[ition] to an unlawful discriminatory practice." Instead, the statute contemplates relief for workers who are retaliated against, for example, for complaining to superiors about discrimination. *See, e.g.*, Parker v. Strawser Constr., Inc., 307 F. Supp. 3d 744, 760 (S.D. Ohio 2018); *Grimsley v. Am. Showa, Inc.*, No. 3:17-CV-24, 2017 WL 3605440, at *6 (S.D. Ohio Aug. 21, 2017); *Messer v. Summa Health Sys.*, 2018-Ohio-372, ¶ 50. The Motion to Dismiss Count VII is therefore **GRANTED**.

### H.  Count VIII:  Violation of the Whistleblower Statute

Finally, Ms. La Fond alleges that NetJets violated the Ohio whistleblower statute, which prohibits an employer from taking any "disciplinary or retaliatory action" against an employee for making a "written report" concerning "a violation of any state or federal statute or any ordinance or regulation" that "the employee reasonably believes" is a "felony" or some other "criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public

11

health or safety." Ohio Rev. Code § 4113.52(A)-(B). Specifically, Ms. La Fond avers that she

"engaged in protected activity when she repeatedly complained about safety issues, including, but

not limited to, that her excessive workload created safety issues." (ECF No. 7 at 19).

NetJets argues that her claim is preempted by the federal Airline Deregulation Act, which

prohibits discrimination against an employee who provides to her employer "information relating

to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation

Administration or any other provision of Federal law relating to air carrier safety . . . ." 42 U.S.C.

§ 42121(a). "To ensure that the States would not undo federal deregulation with regulation of their

own," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157

(1992), the ADA contains an express pre-emption clause, providing in relevant part:

> [A] State, political subdivision of a State, or political authority of at least 2 States may
> not enact or enforce a law, regulation, or other provision having the force and effect of
> law *related to a price, route, or service of an air carrier* that may provide air
> transportation under this subpart.

49 U.S.C. § 41713(b)(1) (emphasis added). The preemption clause applies to state statutes. *Nw.,*

*Inc. v. Ginsberg*, ⸺ U.S. ⸺, 134 S.Ct. 1422, 1430, 188 L.Ed.2d 538 (2014).

The question is whether enforcing the Ohio whistleblower statute with regard to Ms. La

Fond's complaints about safety issues would have the force and effect of law related to

"route[s]" or "service[s] of an air carrier." 49 U.S.C. § 41713(b)(1). As the Eighth Circuit

explained in *Watson*:

> Because ADA express pre-emption applies only when there is a "significant" impact on
> service, there is a general distinction between state laws that regulate "how [a] service is
> performed (preempted) and those that regulate how an airline behaves as an employer or
> proprietor (not preempted)." *Tobin v. Fed. Express Corp.*, 775 F.3d 448, 456 (1st Cir. 2014)
> (alteration in original) (internal quotation omitted); *see Costello v. BeavEx, Inc.*, 810 F.3d
> 1045, 1055 (7th Cir. 2016). Laws of general applicability can be pre-empted by the ADA,
> *Morales*, 504 U.S. at 386, 112 S.Ct. 2031, but the pre-emption clause should be understood
> in light of its purpose to promote competition in the industry. *S.C. Johnson*, 697 F.3d at
> 559. A whistleblower's wrongful-discharge claim—like a claim alleging race or age

discrimination—does not frustrate the ADA's primary economic objectives. *Abdu-Brisson v. Delta Airlines, Inc.*, 128 F.3d 77, 84 (2d Cir. 1997); *see Wellons v. Nw. Airlines, Inc.*, 165 F.3d 493, 496 (6th Cir. 1999).

*Watson v. Air Methods Corp.*, 870 F.3d 812, 819 (8th Cir. 2017).  With regard to this particular claim, Ms. La Fond does not merely allege wrongful discharged based on discrimination.  Instead, she alleges that she was retaliated against for notifying supervisors about safety complaints that had, by her own admission, the potential to impact NetJets' routes and services.  (ECF No. 12 at 21).  In light of the preemption scheme set forth by Congress, then, her Ohio whistleblower statute claim must be dismissed.  The Motion to Dismiss Count VIII is therefore **GRANTED**.

## IV.  CONCLUSION

The first Motion to Dismiss for Failure to State a Claim by Defendant NetJets is **MOOT.** (ECF No. 4).  The Motion for Leave to File a Second Amended Complaint by Plaintiff Molly La Fond is also **MOOT**.  (ECF No. 23).

The Motion to Dismiss Count IX is **GRANTED**.  (ECF No. 11).  The Motion to Strike is **GRANTED** and the Court **STRIKES** Ms. La Fond's Affidavit.  (ECF No. 15).

The Motion to Dismiss for Failure to State a Claim is **GRANTED IN PART** and **DENIED IN PART**.   (ECF No. 10).  Counts VII and VIII are **DISMISSED.**  Ms. La Fond may proceed with her claims as to Counts I through VI.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:   September 12, 2018**