# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MOLLY LA FOND,**

    **Plaintiff,**

  v.                                              Civil Action 2:17-cv-526
                                                    Judge Algenon L. Marbley
**NETJETS, INC.,**                              Magistrate Judge Jolson

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Protective Order (Doc. 44). The parties are **ORDERED** to meet and confer to schedule Plaintiff's deposition. Within seven days of the issuance of the deposition transcript, the parties are **ORDERED** to submit a joint status report to the Court (jolson_chambers@ohsd.uscourts.gov) regarding the status of the dispute underlying Plaintiff's Motion.

## I.    BACKGROUND

The Court has previously summarized the factual background of this case in its September 12, 2018 Opinion and Order. (Doc. 32 at 2–3). Plaintiff alleges that, while employed by Defendant as an aircraft dispatcher, "she was subject to discrimination on the basis of her gender, including disproportionate scrutiny of her work and intentional assignment of unachievable workloads for the purpose of justifying discipline or termination." (*Id.* at 2). After her complaints about that alleged discrimination were not addressed, Plaintiff requested medical leave to address the anxiety caused by her work environment. (*Id.*). Once she returned from

medical leave, the alleged discriminatory treatment continued. (*Id.* at 2–3). Plaintiff was ultimately fired for alleged insubordination. (*Id.* at 3). In response, Plaintiff brought claims against Defendant under the Family Medical Leave Act, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, Ohio's antidiscrimination statute, and Ohio's whistleblower statute. (*See generally* Doc. 7; *Molly La Fond v. NetJets Aviation, Inc.*, 2:18-cv-00763-ALM-KAJ, Doc. 17 (S.D. Ohio)).

Several months after the issuance of the September 12, 2018 Opinion and Order, Defendant indicated its intent to serve Plaintiff's current employer with a subpoena seeking the following information:

1. All documents and communications relating to La Fond's application for employment with [current employer], including without limitation application materials, documents and communications relating to any of her references, and notes or other records of any interviews.

2. A list or description of La Fond's job duties during her employment with [current employer], including without limitation any job postings for La Fond's position(s) with [current employer] from December 1, 2016 to the present.

3. All documents and communications relating to any requests for disability accommodation and/or medical leave made by or on behalf of La Fond.

4. All documents and communications relating to La Fond's employment with, or relationship to, NetJets, including without limitation documents relating to the reason(s) her employment with NetJets ended.

5. All documents and communications relating to any compensation and/or benefits received by La Fond from [current employer], including without limitation any summary of employee benefits, or summary plan descriptions that were in effect during La Fond's employment with [current employer].

6. All documents and communications relating to La Fond's job performance, including without limitation performance evaluations/reviews and disciplinary records.

(Doc. 44-1).

Plaintiff objected to Defendant serving that subpoena and sought the Court's intervention because of her concern that the subpoena "will only interfere with and threaten her current employment." (Doc. 44 at 4). Plaintiff therefore requested that the Court issue a protective order prohibiting Defendant from issuing a subpoena to her current employer. (*See generally* Doc. 44). Defendant filed a Response in Opposition under seal (Doc. 49), and Plaintiff filed a Reply (Doc. 54).

## II. STANDARD OF REVIEW

A district court may grant a protective order preventing the production of discovery to protect a party or entity from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "To sustain a protective order under Rule 26(c), the moving party must show 'good cause' for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016), *cert. denied sub nom. Fears v. Kasich*, 138 S. Ct. 191, 199 L. Ed. 2d 128 (2017) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (quoting *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 424 (9th Cir. 2011)). Ultimately, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 F. App'x. 498, 500 (6th Cir. 2001) (citation omitted).

## III.     DISCUSSION

This is a single-plaintiff employment discrimination case that has been pending for more than eighteen months. During that time-period, the parties have requested, and the Court has granted, three extensions of the discovery deadline. (*See* Docs. 24, 25, 34, 36, 42, 43). Despite the passage of eighteen months and the numerous extensions, the parties have yet to take the deposition of Plaintiff. The current dispute illustrates the importance of that deposition being taken before the Court issues a definitive ruling on Plaintiff's Motion.

Plaintiff argues that the Court should enter a protective order because the information requested in Defendant's subpoena "has been produced, can be provided without the issuance of a subpoena, and can be obtained by less intrusive means." (Doc. 44 at 13; *see generally* Doc. 54 (detailing documents produced by Plaintiff that address document requests in Defendant's subpoena)). Stressing the potential adverse effect the subpoena could have on her current employment, Plaintiff asserts that many of Defendant's remaining requests can be addressed during a deposition. (*See, e.g.*, Doc. 44 at 7, 10; Doc. 54 at 9, 10, 12).

Defendant counters that Plaintiff has failed to demonstrate a particular and specific harm that would result from the service of a subpoena on Plaintiff's current employer and therefore a protective order is not warranted. (Doc. 48 at 4, 16–19). Further, Defendant emphasizes, contrary to Plaintiff's representations, she has not provided Defendant with all of the documents requested in the subpoena, all of which, Defendant insists, satisfy Rule 26's broad relevancy standard. (*Id.* at 5–16).

Defendant's subpoena requests information regarding Plaintiff's application to her current employer, her job duties with her current employer, her physical and mental health, the reason(s) she stopped working for Defendant, her financial compensation, and her performance

at her current job. (Doc. 44-1). Under Rule 26's broad scope for discovery, the Court agrees that the majority of these requests are relevant to the instant action. For example, information regarding Plaintiff's physical and mental health and any accommodations she receives from her current employer is relevant to her FMLA and ADA claims. *See, e.g.*, *Smith v. Sears, Roebuck & Co.*, No. CIV.A. 08-CV-15021-A, 2009 WL 1508334, at *3 (E.D. Mich. May 29, 2009) (permitting defendant to obtain medical records from plaintiff's current employer in employment discrimination case). Similarly, Plaintiff's recent financial compensation is relevant to the issue of damages and her efforts to mitigate the same. *See, e.g.*, *Stewart v. Orion Fed. Credit Union*, 285 F.R.D. 395, 399 (W.D. Tenn. 2012) (citation omitted) ("In regard to payroll records, these records are discoverable as well, as they are relevant to plaintiffs' damages and mitigation efforts.").

While these requests are generally relevant, the Court is mindful of Plaintiff's concern that the subpoena may impact her current employment. (*See* Doc. 44 at 5 ("[S]ubpoenas directed at a litigant's current employer concerning disputes with past employers 'should only be used as a last resort.'" (quoting *Warnke v. CVS Corp.*, 265 F.R.D. 64, 69 (E.D.N.Y. 2010))). Plaintiff's deposition may eliminate the need for subpoenaing her current employer, or, at the very least, narrow the scope of the requests that may ultimately be served on that employer. For example, Plaintiff has worked for her current employer for a relatively short period of time, and she should be able to testify regarding her job duties during that time-period without difficulty. Assuming Plaintiff's testimony at her deposition will be truthful, as this Court does, the need to subpoena her current employer for documents related to this issue may be moot.

With this example in mind, the Court offers the parties several observations. The Court's belief that Plaintiff's deposition will potentially narrow the scope of—if not eliminate the need for—a subpoena of her current employer is conditioned upon Plaintiff providing direct and

candid responses to Defendant's questions regarding the issues identified in the proposed subpoena. Upon completion of the deposition, the parties are free to raise any remaining issues with the Court: Plaintiff may renew her request for a permanent protective order, and Defendant is, of course, free to oppose that request and move to subpoena Plaintiff's current employer.

Plaintiff's deposition will provide necessary context for the Court to reach a definitive decision on this issue. Upon its receipt, the Court will review Plaintiff's deposition transcript. To the extent that Plaintiff lacks knowledge regarding the issues identified in the proposed subpoena or if her testimony is evasive or less than candid, the Court is inclined to permit Defendant to subpoena Plaintiff's current employer, reconvene Plaintiff's deposition, and consider potential cost-sharing options related to that deposition.

**IV. CONCLUSION**

For the foregoing reasons, the parties are **ORDERED** to meet and confer to schedule Plaintiff's deposition. Within seven days of the issuance of the deposition transcript, the parties are **ORDERED** to submit a joint status report to the Court (jolson_chambers@ohsd.uscourts.gov) regarding the status of the dispute underlying Plaintiff's Motion.

IT IS SO ORDERED.

Date: February 14, 2019                     /s/ Kimberly A. Jolson
                                            KIMBERLY A. JOLSON
                                            UNITED STATES MAGISTRATE JUDGE